UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PAMELA GWINN                                                                                    Plaintiff

v.                                                                               Civil Action No. 3:20-cv-00338-RGJ

U.S. BANCORP d/b/a U.S. BANK                                                                  Defendants
NATIONAL ASSOCIATION; MATT
HAVERMAN, individually and in his
capacity as a Representative of U.S. Bank;
and KRISTOPHER WEIMER, individually
and in his capacity as a Representative of
U.S. Bank,

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendants Matt Haverman ("Haverman") and Kristopher Weimer ("Weimer") move for judgment on the pleadings. [DE 7]. Plaintiff Pamela Gwinn responded, [DE 10], and Defendants replied. [DE 13]. This matter is ripe. For the reasons below, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

**I.      BACKGROUND**

Plaintiff is "an adult female over the age of forty[.]" [DE 1-1 at 20]. For several years, Plaintiff worked for U.S. Bancorp ("U.S. Bank") in both banker and supervisor roles. [*Id.* at 13]. At all times relevant, Plaintiff worked at U.S. Bank's Churchill Downs branch (the "Branch"). [*Id.* at 12-13]. The Branch typically operated from 11:00 AM until 5:00 PM on Wednesdays through Sundays. [*Id.* at 14]. Plaintiff regularly arrived at work sometime in the hour preceding the Branch's opening "to prepare the Branch for business." [*Id.*]. In 2017, Haverman became the "In-Store District Manager" for the Branch. [*Id.*]. Haverman created a recurring social event called "Mango Mondays" for "a selective group of employees from across the branches of the Company"

1

where the group would go on "an outing to a local restaurant and/or bar[.]" [*Id.*]. Plaintiff was not invited to Mango Mondays. [*Id.*].

In fall 2017, John Mills, the Branch Manager, told Plaintiff that "Haverman communicated to [Mills] that [Plaintiff] was not to begin work until 10:30" AM and that Haverman specifically asked Mills "not to inform [Plaintiff] where those instructions originated." [*Id.*]. Plaintiff "believes this was an attempt to force [her] to quit and/or resign since everyone knew she was not interested in obtaining additional hours at other branches[.]" [*Id.* at 14-15]. Plaintiff contacted a Human Resources ("HR") representative about this hours reduction, and shared additional concerns with the representative, including her opinion that there was a lack of typical ongoing employee training, as well as her "belie[f that] Haverman was after her." [*Id.* at 15]. Plaintiff's complaints to the HR representative "led to a meeting with Mills, [Plaintiff], and Haverman" in which Haverman told her that "the reduction in her hours was to help the Branch save money." [*Id.*]. Plaintiff continued beginning work at 10:15 AM, but "she recorded her time as 10:30 [AM] on her timesheet as she had been instructed." [*Id.* at 15.]

In April 2018, Mills left U.S. Bank and Weimer took over the role of Branch Manager. [*Id.*]. "It was well known that Weimer and Haverman had an established relationship outside of" U.S. Bank. [*Id.*]. Plaintiff "believes Weimer was sent to the Branch to get rid of" her. [*Id.*]. Plaintiff recalls Weimer questioning her about not entering her time for lunch during a busy season, and Plaintiff "explained [she was] too busy to take a lunch," because the Branch typically only had two individuals working there, so "it was very rare that either of the employees took lunch and it had been that way since [Plaintiff] began to work there." [*Id.* at 16]. Weimer, in response, "went on about saving the bank money." [*Id.*].

2

The next month, "Weimer worked as a substitute banker, as the regular banker went on vacation." [*Id.*]. While working with Plaintiff, Weimer told her that she would be eligible for retirement that fall; Plaintiff responded that she did not plan to retire in the fall. [*Id.*]. A few weeks after he worked as a substitute banker, Weimer "implied that he had communicated with [Plaintiff] and the banker that they were to clock in at 10:45" AM, but neither Plaintiff nor the banker recalled "any communications from Weimer regarding this change." [*Id.*]. Plaintiff "felt the change in their hours was directed to her in retaliation of her speaking to HR regarding the initial reduction of hours and other concerns." [*Id.*]. A few weeks after the new reduction of Branch hours, Plaintiff "received an email from Weimer asking when she planned to retire so he could begin searching for a replacement[,]" and in response, Plaintiff again stated that she was not planning to retire at that time. [*Id.*].

In July 2018, the Branch began operating on Mondays, and Plaintiff informed Weimer that because of a longstanding commitment, she would be unable to work Mondays. [*Id.* at 17]. The Branch's hours were also updated to 11:00 AM to 5:00 PM, and "Weimer relayed that the Branch employees were to report to work five minutes before the Branch opened." [*Id.*]. Despite Plaintiff's scheduling conflict on Mondays, "since Weimer reduced [Plaintiff]'s hours again, [Plaintiff] informed Weimer she would work those Mondays after all and complied with the new hours." [*Id.*]. Plaintiff remembers a Monday sometime later when Weimer called the Branch and asked Plaintiff why she was working; he informed her that working six consecutive days, as she had, was "not permitted." [*Id.*]. That said, Plaintiff believed that "[t]his was untrue and was not policy and/or procedure throughout" U.S. Bank. [*Id.*]. She believed "Weimer was trying to instigate her . . . to retire." [*Id.*].

3

In September 2018, "Carol Paul ("Paul") was sent to the Branch to 'coach'" Plaintiff on management techniques that, according to Plaintiff, "had not previously existed at the Branch during [her] tenure." [*Id.*]. Paul and Haverman were friends, so Plaintiff "felt Paul was sent to the Branch so Paul would report to Haverman any grievances Paul had of [Plaintiff]'s work performance or to encourage [Plaintiff] to speak critically about Haverman and/or Weimer." [*Id.* at 17-18]. Plaintiff recalls Paul talking about the new management coaching being "unnecessary" because of the way the Branch operated. [*Id.* at 17-18].

In fall 2018, "Haverman changed the Branch opening hours from 12:00 p.m. to 5:30 p.m." which "created conflicts with existing" customers. [*Id.* at 18]. Plaintiff informed Haverman that this hours change did not adhere "to the [U.S. Bank] operational procedures, namely the policy governing branch hour changes[,]" and Plaintiff "believed the reduction in hours was another attempt to force her into retirement[.]" [*Id.*].

In November 2018, Plaintiff's coworker told Plaintiff that at the weekly Mango Monday event, Weimer "engage[d] in a negative conversation with her about" Plaintiff. [*Id.*]. Plaintiff "was not interested in hearing" the substance of the negative comments, so Plaintiff "does not know what was said[.]" [*Id.*]. Plaintiff asked Paul for advice as to what to do, and Plaintiff also took her concerns to Haverman, who "never responded or acknowledged one way or another." [*Id.*]. Plaintiff also made a report to HR, and an HR representative scheduled a telephone conference to discuss the incident. [*Id.*]. The telephone conference occurred just before Thanksgiving break, and Plaintiff took a medical break immediately following Thanksgiving for a procedure, so ultimately "nothing was accomplished before [Plaintiff] left for medical leave." [*Id.* at 19]. When she returned in early 2019, there was a new employee working at the Branch and there was no money in her "'vault' because she had been out for six weeks, and the new

4

employee did not have money as well." [*Id.*]. The day after her return, Plaintiff perceived Weimer as being uncharacteristically nice to her, and he informed her that they would be downsizing her vault. [*Id.*]. The next week, the coworker that told Plaintiff the Mango Monday gossip informed Plaintiff, by text, that she had just been terminated over an account transaction, and that "she believed management was coming for [Plaintiff] next." [*Id.*]. An hour later, "Haverman, Weimer, and the District Operations Manager . . . terminate[d]" Plaintiff. [*Id.*]. Plaintiff does not state the grounds for her termination in her Complaint. Plaintiff concluded, however, that Haverman and Weimer conspired to terminate her while she was on medical leave, and that they "retaliated against [her] for reporting the inappropriate behavior and gossip that Weimer attempted to share with [Plaintiff's coworker]." [*Id.* at 19-20]. Plaintiff also maintains that "Haverman and Weimer retaliated against [her] because of her age and her wish to continue working rather than retire." [*Id.* at 20]. In her Response to Defendants' Motion, Plaintiff asserts that she was terminated for "transfer[ring] money between clients with different types of accounts[,]" which she argues was a regular, known practice or policy of U.S. Bank. [DE 10 at 102].

## II. DISCUSSION

Fed. R. Civ. P. 12(c) provides that "a party may move for judgment on the pleadings." A court is to apply the same standard to a motion for judgment on pleadings that it applies to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)

(quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). A motion for judgment on the pleadings may be "granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* (quoting *Paskvan v. City of Cleveland Civ. Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

"The liberal pleading standard applicable to civil complaints does not require that a retaliation complaint set forth specific facts establishing a prima facie case, but it must allege facts that establish a plausible claim to relief." *Carrethers v. Speer*, 698 Fed. App'x 266, 270 (6th Cir. 2017) (citing *Keys v. Humana*, 684 F.3d 605, 609-10 (6th Cir. 2012)). That said, a plaintiff must allege that he was engaged in a protected activity to state a claim under the Kentucky Civil Rights Act ("KCRA"). *Krueger v. Home Depot USA, Inc.*, 674 Fed. App'x 490, 495 (6th Cir. 2017). "The KCRA states that it is unlawful for an employer to 'retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter.'" *Id.* (quoting Ky. Rev. Stat. § 344.280). "The requirement that a protected activity be alleged is necessary to state a claim under the KCRA and therefore, does not heighten the pleading standard or reflect a prima facie evidentiary standard." *Id.* So, to allege "engage[ment] in a protected activity under the KCRA," a plaintiff must plead that they "contest[ed] an unlawful employment practice." *Id.* "Making abusive remarks is not illegal under the KCRA, so making a complaint about such actions cannot constitute protected activity under the KCRA." *Id.* (citing Ky. Rev. Stat. § 344.280).

Defendants correctly point out that "none of the issues Plaintiff alleges she complained about are illegal under the KCRA[.]" [DE 7-1 at 88]. Plaintiff's allegation that she "contacted a HR representative of [U.S. Bank] about the reduction in her hours" and told them about her "other

6

concerns i.e.," a lack of employee coaching and her "belie[f that] Haverman was after her[,]" [DE 1-1 at 15], does not constitute a protected activity. *Krueger*, 674 Fed. App'x at 495. Nor does Plaintiff's allegation that she told HR about "a negative conversation" Weimer had with Plaintiff's coworker, especially where the contents of said conversation were unknown to Plaintiff. [*Id.* at 18]. Because Plaintiff was unaware of the contents of Weimer's gossip about her, any information she could have relayed to HR about said gossip amounts, at most, to a generalized complaint of "abusive remarks[,]" which "is not illegal under the KCRA[.]" *Krueger*, 674 Fed. App'x at 495. The gravamen of Plaintiff's complaints to HR was her disagreement about management practices and qualms with her reduced hours. [*See* DE 1-1 at 20].[1] Plaintiff's response to the Motion clarifies this point further:

> [Plaintiff]'s claims against U.S. Bank extend to both Mr. Haverman and Mr. Weimer for actions they individually took against [Plaintiff] either based on her age (e.g. repeatedly discussing retirement options with [Plaintiff] after she confirmed on more than one occasion that she had no intent to retire); or in retaliation against [Plaintiff] for *reporting a continuous reduction in her work hours* to HR.

[DE 10 at 101] (emphasis added). Viewing all of Plaintiff's allegations in the light most favorable to her, Plaintiff might have presented a generalized grievance about abusive remarks to HR, which is not a protected activity. *Krueger*, 674 Fed. App'x at 495. As a result, Plaintiff has failed to state a claim under the KCRA. Thus, Defendants' Motion for Judgment on the Pleadings [DE 7] is **GRANTED**.

---

[1] Plaintiff alleges that "Haverman and Weimer retaliated against [her] for *reporting the inappropriate behavior and gossip* that Weimer attempted to share with" Plaintiff's coworker. [DE 1-1 at 20] (emphasis added). "Further, Haverman and Weimer *retaliated against [Plaintiff] because of her age* and her wish to continue working rather than retire." [*Id.*] (emphasis added). Plaintiff's allegations make clear that her communications with HR were about her hours reduction and the gossip incident, generally.

### III. CONCLUSION

The Court being otherwise sufficiently advised, the Court **ORDERS** that Defendant Haverman and Weimer's Motion for Judgment on the Pleadings [DE 7] is **GRANTED**. The Clerk of the Court **shall terminate** Defendants Haverman and Weimer from this proceeding. The Court will issue a separate Order for Meeting and Report under Fed. R. Civ. P. 16 and 26.

Rebecca Grady Jennings, District Judge
United States District Court

March 31, 2021

Copies to: Counsel